## Charlotte A. Hutchinson v. Francis Beidler & Company.

### Gen. No. 13,229.

1. MECHANIC'S LIEN—*when notice of claim sufficient under act of 1903.* A subcontractor's notice given to the owner under the Act of 1903 is sufficient where it recites that there was due to the complainant on the day specified for material furnished, an amount specified.

2. MECHANIC'S LIEN—*what sufficient delivery of material.* A

Hutchinson v. Francis Beidler & Co.

delivery of material at the place where the building or improvement was being constructed for the purpose of being used in such construction is a sufficient delivery under the Mechanic's Lien Act.

3. MECHANIC'S LIEN—*when payment by owner not valid as against subcontractor.* Payments made by the owner to a contractor cannot prejudice or affect a subcontractor's lien where it appears that no statement containing the names of parties furnishing material or labor, such as is required by the act, was furnished to or obtained by the owner.

Mechanic's lien. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed July 9, 1907.

**Statement by the Court.** This is an appeal by the defendant, Charlotte A. Hutchinson, the owner of the premises 196 South Desplaines street, Chicago, from a decree declaring complainant entitled to a lien, under the Mechanic's Lien Act, for $1,832.50 for lumber furnished by complainant to the defendant Julien, who had contracted with Mrs. Hutchinson to do the work and furnish the material required to add two stories to a factory building theretofore built on said premises. Mrs. Hutchinson and Julien answered complainant's bill, replications were filed to said answers and the cause was then referred to a master in chancery to take and report the proofs with his conclusions. The master's report was in favor of complainant. Mrs. Hutchinson filed a large number of objections to the draft report, which were overruled by the master. The objections before the master were ordered to stand as exceptions to his report in the Circuit Court. That court overruled said exceptions and entered the decree appealed from.

ALLEN G. MILLS, for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER and ARTHUR B. SCHAFFNER, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

The first ground of reversal urged is, that the notice by complainant to the owner, Mrs. Hutchinson, given November 30, 1903, was defective and insufficient because it did not state when the amount claimed to be due complainant from the contractor Julien became due. The contract between Julien and complainant was made after July 1, 1903, and the lumber was furnished after that date. The law then in force was the Mechanic's Lien Act of 1903. The Act of 1895 provided that the notice to be given by the subcontractor or material man to the owners should state: "the amount due or to become due to such subcontractor and the time when it became or will become due." The Act of 1903 provides that such notice shall state: "that there was due to me or is to become due (as the case may be) therefor the sum of——dollars." The notice given in this case by complainant stated that there was due complainant: "on November 10, 1903," (for lumber furnished Julien) "the sum of $1,482." This notice is, we think, sufficient under the provisions of the Act of 1903.

The second ground of reversal urged is, that the last load of lumber delivered by complainant to Julien was delivered September 29, and as the notice to Mrs. Hutchinson was not given until November 30, more than sixty days after September 29, it was too late. The contention of appellee is, that the last load was delivered October 2 and the notice was therefore in time. The master's finding of facts touching the question of the delivery of lumber by complainant to defendant Julien on October 2, is as follows:

"On October 1, 1903, certain lumber, amounting in value to the sum of $40.09, was hauled by a teamster of complainant, to the premises in question, and when it arrived at its destination, the teamster was informed that some of it had not been tongued and grooved, as

was required; and he thereupon returned with his load to the place of business of the complainant company. The lumber in question was then sent to a mill to be tongued and grooved, and on the 2nd day of October, this same lumber, after it had been tongued and grooved, was hauled back to the premises in question.

"The building on the premises in question abuts on an alley, in its rear, along which runs an elevated railroad; and, by some understanding between the parties and the said elevated railroad company, the space immediately in the rear of said premises and under said elevated structure had been used as a place of delivery of the lumber purchased from said Beidler & Co. by said Julien.

"The lumber mentioned as delivered on said 2nd day of October was unloaded in the rear of said premises, where it had been the custom to deliver it, prior thereto.

"This last lot of lumber was delivered at about 5:30 or 6 o'clock P. M. and neither said Julien nor any of his carpenters or employes were present at the hour when it was delivered. An employe of the tenant who occupied the premises in question was asked by the driver of Beidler & Company to sign for the load, but he refused to do so, saying that he had got into trouble before by signing in that way and would not do it again. Thereupon the driver unloaded the lumber without getting any receipt for it.

"It appears from the evidence that the job in question was substantially completed at the time of this delivery, although at that time there was some work being done by the carpenters under Julien, in connection with the putting in the windows in the rear of the building. The evidence does not show whether or not the said Julien or any of his employes ever actually saw the said lumber, or knew that it had been so delivered, nor does it show that there was ever any controversy or question between said Julien and the

said Beidler & Co. with reference to the said particular load of lumber.

"The said Julien, although a witness in the case, was not examined by either party with reference to this load of lumber, or with reference to the question of its delivery.

"The said load of lumber continued to lie in the alley in the rear of said premises for a period of two or three weeks or more. The tenant of said premises was notified by some agent of said elevated railroad company to remove said lumber, but they paid no attention to said request and after it had been there about three weeks, some men came, one of them dressed in uniform (presumably someone connected with the railroad), and removed the lumber to some place, the exact place being not disclosed by the evidence. It seems clear, however, that said lumber was never used in the construction of the improvements in question.

"Although it does not clearly appear that the said Julien or his agents actually receipted for this lumber, or that they actually knew that it was delivered, yet it is certain that the said lumber was actually delivered at the place where deliveries had theretofore been made, under the contract between said parties, and while not delivered 'on' the premises in question, yet it was delivered 'at the place' where said improvements was going on, and it is sufficient, under the provisions of the mechanic's lien law, if the material is delivered 'at the place where said building or improvement is being constructed, for the purpose of being used in construction.' In my opinion, this lumber was delivered by the complainant at the place where said improvement was being constructed, for the purpose of being used in construction, although perhaps it does not appear that it was actually used by the said Julien in said construction.

"The evidence shows that said lumber was ordered and delivered for the purpose of being used in said construction, and after it was ordered and delivered

for such purpose at the place in question, the said complainant parted with all responsibility with reference to it. It does not seem to me that it would be necessary to show an actual acknowledgment of the delivery by some receipt, or by the personal acknowledgment of Julien, or some of his employes, in view of the fact that it was delivered at the place where such deliveries were being made, and in view of the fact that there is no dispute but that it had been ordered."

We have examined the evidence and think that the findings of fact above set forth are in accordance with the evidence in the record.

Section 7 of the Mechanic's Lien Act of 1903 contains the following provision:

"Nor shall any such lien for material be defeated because of lack of proof that the material after the delivery thereof, actually entered into the construction of such building or improvement, although it be shown that such material was not actually used in the construction of such building or improvement: Provided, it is shown that such material was delivered either to such owner or his agent for such building or improvement to be used in such building or improvement, or at the place where said building or improvement was being constructed, for the purpose of being used in construction."

We think that the delivery of the lumber on October 2, "at the place where said building or improvement was being constructed for the purpose of being used in construction" was a sufficient delivery under the statute and that the notice was served in time.

The third ground of reversal urged is that it appears from the proofs and the findings of the master that at the time the notice was served, Mrs. Hutchinson had fully paid Julien, and the decree contains no finding that any amount was due from her to Julien when the notice was served. Section 32 of the Lien Act of 1903 is as follows: "No payment to the con-

tractor or to his order of any money or other considerations due or to become due to the contractor shall be regarded as rightfully made, as against the subcontractor, laborer or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections five and twenty-two of this Act." Section 5 of the Act makes it the owner's duty to require, and the contractor's duty to give, a sworn statement containing the names of all parties furnishing material or labor, and of the amount due or to become due to each, before any money is paid by the owner to the contractor. Section 22 makes it the duty of a subcontractor, upon request in writing by the owner, to make out and give to the owner a statement similar to that required by section 5 to be given by the contractor to the owner. The master's report finds that Mrs. Hutchinson paid Julien, the contractor, $2,996.01 at various times from July 29 to October 27, 1903, without obtaining the sworn statements required by sections 5 and 22 of the Act. By the express terms of said section 32 none of said payments can, as between Mrs. Hutchinson the owner and complainant, a party furnishing materials, be regarded as rightfully made, and as between them the sums so paid must be regarded as still due from Mrs Hutchinson to Julien, the contractor.

There appears in the record a statement addressed to Mrs. Hutchinson, signed by Julien and sworn to November 6, 1903. It contains no names and clearly is not such a statement as the law requires a contractor to give to an owner to make a payment by the owner to him rightful under said section 32. But such a statement, if formal, made after the money had been paid by the owner to the contractor, could not render such payment rightful as between the owner and a subcontractor.

The fourth and last ground of reversal urged is,

Hutchinson v. Francis Beidler & Co.

that the moneys paid by Julien to complainant during August and September, 1903, which were applied by complainant upon other indebtedness of Julien to it, should, under the facts of this case, be applied upon the indebtedness of Julien to complainant for lumber furnished by it to him for the purpose of being used in the construction of the addition to Mrs. Hutchinson's building.

In July, August and September, 1903, Julien had contracts for the erection or alteration of half a dozen or more buildings in Chicago, and bought lumber from complainant to be used in each of said buildings. Complainant kept with him a separate account of the lumber furnished for each building. The master found that Mrs. Hutchinson paid Julien July 29, 1903, $500, August 6, $1000, September 3, $600, October 16, $675, and October 27, $221.91; that such payments were made, as has been said, without obtaining any statement from Julien, and without any direction to Julien to apply the same or any part thereof to the payment of his indebtedness to complainant; that Julien paid complainant August 7, 1903, $700, September 10, $450, and September 24, $450; that at the time of making each of said payments Julien directed complainant to apply the same upon his accounts for lumber furnished at other places than Mrs. Hutchinson's building and the same was so applied. We agree with the master in his finding of facts and in his conclusion that the money paid to Julien by Mrs. Hutchinson became the money of Julien and he had a right, when he made his payment to complainant, to direct its application as he did direct it in this case.

We find no error in the record and the decree of the Circuit Court will be affirmed.

*Affirmed.*